

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable J. P. Gibbs, Commissioner
Casualty Insurance Commission
Board of Insurance Commissioners
Austin, Texas

Dear Sir:

Opinion No. O-4593
Re: In the event that a mutual in-
surance company or a reciprocal
or inter-insurance exchange is-
sues policies containing the non-
contingent liability provisions
prescribed by the insurance de-
partment and before the expira-
tion of the policy thus issued
the mutual insurance company or
the reciprocal exchange becomes
insolvent, would the holders of
such policies be liable for as-
sessment or for a contingent ad-
ditional premium?

The receipt of your opinion request paraphrased
above is acknowledged. Copy of your letter of May 15, con-
taining such request, omitting the formal parts, is here set
out:

"This department in conformity with the provisions
of Article 4860a-10, Revised Civil Statutes of
Texas, has prescribed the following conditions
which may be printed into a mutual policy contract
provided the surplus meets the requirements set
forth in said article:

"'MUTUALS - PARTICIPATION CLAUSE WITHOUT CON-
TINGENT LIABILITY No Contingent Liability:
No policyholder in this company incurs any
liability other than the Deposit Premium or
Premium Paid; the company having accumulated,

and now having intact, a free surplus equal
to the Capital Stock required of a domestic
stock insurance company transacting the same
kind of insurance. This is in accordance
with the company's By-Laws and the provi-
sions of the Mutual Insurance Act passed by
the 41st Legislature, 1929, First Called Ses-
sion, Page 90, Chapter 40, Section 10.

"'Mutual Participation: The insured is, by
virtue of this policy, a member of the com-
pany, subject to the By-Laws, reference to
which is had, and shall be entitled to such
unabsorbed Deposit Premium or Dividend as
may be declared by the Board of Directors
or Executive Committee, subject, however,
to approval by the Board of Insurance Com-
missioners of the State of Texas before be-
ing paid.'

"This department has also prescribed the following
language to be used by a reciprocal exchange when
the eligibility requirements are met:

"'NO CONTINGENT LIABILITY: No policyholder
in this Exchange incurs any liability other
than the deposit premium or premium paid;
the exchange having accumulated and now hav-
ing intact a free surplus in the amount de-
fined by Article 5026 as amended by Chapter
8, Page 417, Acts 46th Legislature, 1939,
Regular Session. This is in accordance with
the exchanges Articles of Agreement and the
provisions of the referred to Article (5026).'

"We are receiving numerous inquiries in connection
with these provisions. We, therefore, respectfully
request your opinion on the following question:

"In the event that a mutual insurance company
or a reciprocal or inter-insurance exchange is-
sues policies containing the appropriate fore-
going non-contingent liability provisions pre-
scribed by the department and before the expira-
tion of policies thus issued, the mutual insurance
company or the reciprocal exchange becomes in-
solvent, would the policyholders be liable for
assessment or for a contingent additional premium?"

The act referred to in the second paragraph of your letter as "Mutual Insurance Act passed by the 41st Legislature, 1929, First Called Session, page 90, chapter 40, Section 10", is Article 4860a-10, Vernon's Annotated Civil Statutes, which Article is as follows:

"The policies shall provide for a premium or premium deposit payable in cash, and except as herein provided for a contingent premium at least equal to the premium or premium deposit. Such a mutual company may issue a policy without a contingent premium while, but only while, it has a surplus equal to the capital required of a domestic stock insurance company transacting the same kinds of insurance, but any such company may issue a policy providing that the holder of any such policy shall be liable for no greater amount than the premium or premium deposit expressed in the policy. If at any time the admitted assets are less than the unearned premium reserve, other liabilities and the required surplus, the company shall immediately collect upon policies with a contingent premium a sufficient proportionate part thereof to restore such assets, provided no member shall be liable for any part of such contingent premium in excess of the amount demanded within one year after the termination of the policy. The Board may, by written order, direct that proceedings to restore such assets be deferred during the time fixed in such order."

The fifth paragraph of your letter refers to Article 5026, Vernon's Annotated Civil Statutes as amended. The portion of such Article applicable to this question, follows:

". . . Such power of attorney or other authority executed by the subscribers at any such exchange shall provide that such subscribers shall be liable, in addition to the premium or premium deposit specified in the policy contract, to a contingent liability equal in amount to one additional annual premium or premium deposit. Such subscribers at such exchange may provide by agreement that the premium or premium deposit specified in the policy contract on all forms of insurance except life shall constitute their entire liability through the exchange while, but only while,

Honorable J. P. Gibbs, Commissioner, Page 4

the free surplus of the reciprocal exchange is equal to Two Hundred Thousand Dollars ($200,000); provided that if such exchange does not or is not applying to exchange workmen's compensation, employers' liability, or contracts providing indemnity against legal liability to third persons, except automobile public liability and property damage which is not subject to the regulations of the Interstate Commerce Commission, the Railroad Commission of Texas, or other similar bodies in the various States, such exchange may provide by agreement that the premium or premium deposit specified in the policy contract shall constitute the subscriber's entire liability through the exchange while, but only while, it maintains a free surplus of not less than Fifty Thousand Dollars ($50,000) if only one kind of insurance is exchanged, with an additional Ten Thousand Dollars ($10,000) of free surplus for each additional kind of insurance exchanged (including automobile public liability and property damage which is not subject to the regulations of the Interstate Commerce Commission, the Railroad Commission of Texas, or other similar bodies in the various States), but not more than One Hundred Thousand Dollars ($100,000) surplus shall be required; provided, however, that any domestic reciprocal organized prior to the effective date of this Act which has been and is exchanging contracts without contingent liability and which does not have the minimum surplus required by this Section to exchange such contracts, may continue to exchange contracts without contingent liability until December 31, 1943, provided that

"(a) On December 31, 1939, December 31, 1940, December 31, 1941, and December 31, 1942, it shall have increased its surplus by respective amounts of twenty-five (25) per centum of the difference between the surplus existing on December 31, 1938, and the surplus herein required of a reciprocal before it is permitted to exchange contracts without contingent liability; and

"(b) At no time during each calendar year of the period above referred to shall the surplus

Honorable J. P. Gibbs, Commissioner, Page 5

be less than thirty (30) per centum of the premiums written during each such year; and

"(c) All other provisions of this Act shall be complied with; and

"(d) If such reciprocal fails to increase its surplus in accordance with this subsection, such reciprocal shall be subject to the minimum surplus as above-mentioned, or discontinue exchanging policies without contingent liability.

". . . ."

The brief accompanying your letter alludes to the District Court case of Wright Morrow, Receiver, vs. Trinity Portland Cement Co., et al, No. 51,867 on the docket of the 126th District Court of Travis County, Texas. The judgment by the Court in this case was entered May 1, 1933, and is of record in the civil minutes of said Court in Volume 50, page 1. This case contained an issue involving a statutory provision similar to those contained in the above quoted statute, said provision being Section 16a of Article 8308 of the Workmen's Compensation Law, Acts of 1917 as amended by the 42nd Legislature in 1939 which is as follows:

"Sec. 16a. Whenever the Association shall have accumulated, at the end of any calendar year, an admitted surplus in excess of incurred losses, expenses and unearned premiums or other liabilities amounting to the sum of Two Hundred Thousand Dollars ($200,000.00) or more, the liability of its members to assessment under Article 8308, Section 15, shall be suspended, and it shall be authorized to issue policies not subject to assessment. It shall be the duty of the Board of Insurance Commissioners to determine promptly after the filing of the annual Statement of the Association, whether or not such an amount of surplus exists and if it finds that it does, it shall so state in a certificate. Such certificate shall remain in full force and effect for one (1) year or until such time as a later report to or examination by the Department of Insurance shall show the surplus to be less than Two Hundred Thousand ($200,000.00) Dollars, whereupon the Board of Insurance Commissioners shall cancel and revoke such certificate

Honorable J. P. Gibbs, Commissioner, Page 6

and require the Association to issue policies sub-
ject to assessment under Article 8306, Section 15,
as they were prior to the time when such surplus
of Two Hundred Thousand ($200,000.00) Dollars or
more was first accumulated."

Purporting to act in accordance with this statutory
provision, the Lumbermen's Reciprocal Association of Houston,
Texas, in 1929 and again in 1930 attached an endorsement to
contracts issued during such year providing for suspension of
liability to assessment, substantially as follows:

"By virtue of the accumulation by the Asso-
ciation at the end of the year immediately pre-
ceding the year of issue of this contract of an
admitted surplus in excess of incurred losses,
expenses and unearned premiums amounting to more
than $200,000.00 in accordance with Section 16A
of part 3 and Section 2 of part 4 of Chapter 179,
Acts of 1913, State of Texas, and/or any amend-
ments thereof, and by virtue of authority of the
Insurance Department of the State of Texas, the
home office state of this Association, the liabil-
ity to assessment of the subscriber named in this
contract is suspended during the current calendar
year and for such further period as the Associa-
tion shall continue to maintain unimpaired such
surplus of more than $200,000.00.

"Nothing herein contained shall be held to
waive, vary, alter or extend any of the terms and
conditions of this contract except as stated above.

"Attached to and forming a part of contract
No. _____, issued by the subscribers at Lumber-
men's Reciprocal Association, of Houston, Texas,
to _____, dated at Houston, Texas, this
_____ day _____."

The Lumbermen's Reciprocal Association became in-
solvent, the Court's determination of the beginning of in-
solvency being July 1, 1929, and the receiver was appointed
July 31, 1930. Whereupon, the receiver brought suit in cause
No. 51,867 mentioned above against the policyholder members
of the association for judgment levying assessments against
such members to make up the deficit in the association's
funds in order that the debts and claims against it might

be paid. Some of the defendants pleaded the above quoted endorsement as a defense against recovery of such assessment. It was found by the Court after hearing the pleadings, evidence, and arguments, that such endorsement was no bar to recovery of assessments by the receiver in that particular case, as stated in your brief. The Court did not construe the statute or pass upon the effect the endorsement may have had if it had been validly attached to the policy at a time when the representations recited in such endorsement would have reflected the true facts as to the amount of surplus, but based its findings that the endorsement was of no force and effect upon evidence that such endorsement was founded upon false and fraudulent representations made by the company, the surplus claimed therein being, in fact, non-existent.

This finding, even if we disregard the fact that a District Court judgment alone, (there having been no appeal taken from this trial) is without force as a precedent and is not binding on any other court, renders this case, and other cases arising out of this case, such as Southern Ornamental Iron Works vs. Morrow, 101 S. W. (2d) 336 and Morrow vs. Vaughn Bassett Furniture Company, Inc., Sup. Ct. of Ap. of Virginia, 4 S. W. (2d) 399, this last mentioned case being one of the cases cited in your brief (both of these cases having held in effect that the question of the validity of the endorsement was res adjudicata in the trial court) of little or no help in construing the law on your question, because it leaves unanswered the question as to what the effect of the endorsement would have been had the purported compliance with the statute been regular and without fraud.

Your question as we conceive it may be stated as follows: If a mutual insurance company or a reciprocal or inter-insurance exchange issues policies providing for non-assessment or no contingent liability, at a time when such company, reciprocal or inter-insurance exchange has in truth and in fact the free surplus required to meet the provisions of the statutes, would the holders of such policies be liable for assessment or for contingent additional premiums in the event the company, reciprocal or exchange becomes insolvent during the life of such policies?

We deem it fundamental that provisions of an insurance contract in conflict with statutory provisions applying to such contract are invalid and must yield to the provisions of the statute. In this connection your attention is directed

Honorable J. P. Gibbs, Commissioner, Page 8

to the following authority:

> "Stipulations in a contract of insurance in
> conflict with, or repugnant to, statutory provi-
> sions, which are applicable to and form a part of
> the contract, must yield to the statute, and are
> invalid, since contracts cannot change existing
> statutory laws." American National Insurance Com-
> pany vs. Tabor, 230 S. W. 397; Queen Insurance
> Company vs. Jefferson Ice Company, 64 Tex. 578.

Since the wording of Article 4860a-10 dealing with
mutual insurance companies is substantially different from
Article 5026 dealing with reciprocals and inter-insurance
exchanges, such Articles will be treated separately in this
opinion.

There are three possible constructions of Article
4860a-10 as far as same applies to the contingent liability
of policyholders. The first of these constructions would
have the statute mean that when the surplus reaches the re-
quired amount set forth in the statute, no policyholder,
whether his policy be issued prior to, or after the time
such surplus is reached, shall be liable for any further
assessments, even if the required surplus becomes impaired
during the time for which the policies are issued. In our
opinion this interpretation is incorrect since the statute
makes no provision for removing the contingent liability
attaching to policies issued prior to the time that the re-
quired surplus is reached. Moreover the statute continues
as follows:

> "If at any time the admitted assets are less
> than the unearned premium reserve, other liabil-
> ities and the required surplus, the company shall
> immediately collect upon policies with a contin-
> gent premium a sufficient proportionate part there-
> of to restore such assets." (Emphasis ours)

The last quoted provision specifying policies with
a contingent premium clearly indicates that there may be out-
standing two classes of policies, one class bearing a con-
tingent liability and one class without a contingent liability.

The second construction would have the statute mean
that the policies issued without contingent liability carry

Honorable J. P. Gibbs, Commissioner, Page 9

such exemption for only so long as the required surplus remains unimpaired, thus making the exemption from contingent liability depend upon the continued existence of the required surplus. The statute says in effect that the company may issue a policy without a contingent premium while, but only while, the required surplus exists. It does not say that the exemption from contingent liability shall continue while, but only while, the required surplus exists. It does not specify any time when the exemption from contingent liability shall cease, but specifies only the time during which the company may issue policies without a contingent premium. In order to adopt this second construction it would be necessary to read into the statute a provision that the exemption from contingent liability should cease when the required surplus becomes impaired. Such a construction would do violence to the terms of the statute.

The third construction which we believe to be in accordance with the plain terms of the statute would have the statute mean that mutual insurance companies cannot issue policies with exemption from contingent liability until the surplus of such companies reaches the required statutory minimum, and that upon reaching such required surplus the companies may begin issuing policies with no contingent liability of any kind, and that if at a later date, it became necessary to make an assessment, such assessment could not be made on those policies issued after the company reached the required minimum surplus and bearing a provision that such policy is not subject to contingent liability. Of course, the company's right to issue such policies ceases at the moment its surplus falls below the required minimum.

It is, therefore, our opinion that the provisions furnished by you for printing into mutual policy contracts should be amended in part as follows: that portion of the provision reading "no policyholder in this company incurs any liability other than the deposit premium or premium paid" should read substantially as follows: "the holder of this policy incurs no liability other than the deposit premium or premium paid."

It is not uncommon for a mutual company to write insurance on the cash plan as well as on the assessment plan. Cooley's Briefs on Insurance, 2nd Ed., Vol. 2, p. 1576 reads in part as follows:

"Where a company is authorized to do business on the cash plan as well as on the mutual plan

Honorable J. P. Gibbs, Commissioner, Page 10

premium notes given by members insuring on the
latter plan may be assessed to pay losses sus-
tained on policies written on the cash plan."

The third construction above adopted is supported
by the case of Lewis vs. Independent School District of Austin
decided by the Court of Civil Appeals at Beaumont and reported
in 147 S. W. (2d) 296, which case was reversed by the Supreme
Court of Texas by opinion reported in 161 S. W. (2d) 450. The
Lewis case was a taxpayer's suit to enjoin the school district
from buying a policy in the Millers Mutual Insurance Company
on the ground that the provision in Article 4860a-5 giving the
school district express authority to do so was in violation of
Section 3, Article XI of the Texas Constitution reading as fol-
lows:

"No county, city, or other municipal corpora-
tion shall hereafter become a subscriber to the
capital of any private corporation or association,
or make any appropriation or donation to the same,
or in anywise loan its credit; but this shall not
be construed to in anyway affect any obligation
heretofore undertaken pursuant to law."

And in violation of Section 52 of Article III of such Consti-
tution reading as follows:

"The Legislature shall have no power to au-
thorize any county, city, town or other political
corporation or subdivision of the State to lend
its credit or to grant public money or thing of
value in aid of, or to any individual, association
or corporation whatsoever, or to become a stock-
holder in such corporation, association or company."

The Court of Civil Appeals held that the purchase of the poli-
cy was not a lending of the school district's credit and there-
by, necessarily, held that the policy involved was forever
non-assessable. The Court expressly adopted the following
statement from appellee's brief:

"This policy of insurance is non-assessable.
No further payment can be exacted."

Honorable J. P. Gibbs, Commissioner, Page 11

And the Court further said:

"In the policy at issue before us both on the law and on the facts, the school district could never have been called on for any additional payment."

The Supreme Court reversed the Lewis case on the ground that the policyholder was in effect a stockholder but the Court evidently agreed with the Court of Civil Appeals as to the non-assessability of the policy involved since the Court expressly said:

"It is true that the By-laws provide that the liability of each policyholder is limited to and determined to be the amount of deposit premium specified in the policy issued to such policy holders."

It is our opinion, therefore, that the holder of a policy in a mutual insurance company which policy provides that it shall bear no contingent liability and which was issued at a time when the company had in truth and in fact the free surplus required by the statute, is not liable for assessment or for contingent additional premiums, even though the mutual company becomes insolvent during the life of the policy.

Such an interpretation may seem at first blush to be unfair to those policyholders whose policies were issued prior to the attainment of the required surplus and whose policies therefore bear a contingent liability. On the other hand, the mutual company's ability to sell insurance without contingent liability might greatly aid in the sale of its policies and the growth of the company and thus benefit the holders of assessable policies by reducing the chances that their contingent liability would ever be enforced.

Article 5026, supra, dealing with inter-insurance exchanges and reciprocals specifies the length of time during which the exemption from contingent liability therein provided for shall exist. The statute says in effect that the premium or premium deposit may by agreement, be made the entire liability of the subscriber, while, but only while, the free surplus of the reciprocal or inter-insurance exchange is

Honorable J. P. Gibbs, Commissioner, Page 12

equal to $200,000.00. Thus the exemption from contingent liability is expressly made to depend upon the continuance of the required surplus.

The clause set out in your letter which is prescribed by your department for use in the policies of reciprocal and inter-insurance exchanges should therefore be altered or supplemented to show that the exemption from contingent liability ceases when the required surplus becomes impaired. We suggest that such provision would be more substantially in accordance with the statute if a clause to the following effect be added thereto:

"But the exemption from contingent liability herein provided for shall continue only so long as this exchange maintains the free surplus required by the said Article 5026."

It might be said that such a construction of Article 5026 leaves the exemption from contingent liability of no practical benefit to the policyholder since the exemption continues only so long as a free surplus of $200,000.00 is maintained and since as a practical matter no occasion could arise during such time which would require the levying of an assessment against the members of the reciprocal, or inter-insurance exchange, and thus the exemption is in force only during a time when it is not needed by the policyholders. It is true that Article 11 of the Revised Civil Statutes says

"A transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands."

Article 11 is a general rule of statutory construction laid down in the general provisions of the Revised Civil Statutes.

We are unable to say that the wording of Article 5026 is without meaning because the words used convey a definite idea or intention of the Legislature, even though such expressed intention or rule has little or no practical effect. We do not feel authorized to resort to a transposition of words in order to give the statute more practical effect.

In accordance with this holding you are advised as follows:

1. The owner of a policy issued by a mutual company providing for an exemption from contingent liability and properly

Honorable J. P. Gibbs, Commissioner, Page 13

issued under the terms of Article 4860a-10 never becomes liable for the contingent premium set out in such Article.

2. The holder of any policy in a reciprocal or inter-insurance exchange is liable for the contingent premium provided in Article 5026 at any time the surplus of such reciprocal or inter-insurance exchange does not meet the minimum requirements as set out in such Article.

3. The provisions of any policy governed by Article 5026 or Article 4860a-10 that are in conflict with and repugnant to such Articles are invalid and not binding on either party to the insurance contract.

We trust this opinion is a sufficient answer to your problem.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Donald Gay*

Donald Gay
Assistant

DG:mp

APPROVED JUL 29, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS